UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTINA AGUAYO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 3:23-CV-539-E |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Christina Aguayo ("Plaintiff") files this Response to Defendant's Motion to Dismiss, and would show the Court as follows:

**I.**

**BACKGROUND**

1. On December 6, 2022, Plaintiff filed suit against Congresswoman Veronica Escobar ("Escobar") in Cause No. DC-22-16847, in the 191st Judicial District Court of Dallas County, Texas, for tortious interference with Plaintiff's employment relationship with Nexstar Media, LLC ("Nexstar") and defamation. On January 9, 2023, Plaintiff filed a First Amended Original Petition asserting only a claim of tortious interference against Escobar.

2. On March 10, 2023, the United States removed Plaintiff's First Amended Original Petition to this Court pursuant to the Westfall Act, 28 U.S.C. § 2679 (within the Federal Tort Claims Act, 28 U.S.C. § 2671-2680), asserting Plaintiff's claim against Escobar involves a tort claim against a federal officer or employee. Pursuant to a Westfall Act certification issued pursuant to 28 U.S.C. § 2679(d)(2), the United States asserted that Escobar, in the acts and

omissions on which Plaintiff's First Amended Original Petition is based, was acting in the scope of her office or employment with the United States as a Member of the United States House of Representatives for the 16th Congressional District of Texas.  Due to the certification, the United States was automatically substituted as the defendant in place of Congresswoman Escobar.  Id.

3. On March 17, 2023, the United States further filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1). The United States' motion argues that the United States, and Escobar as a Member of Congress, have sovereign immunity against Plaintiff's tortious interference claim under Section 2680(h) of the Federal Torts Claim Act. That provision of the Federal Tort Claims Act grants sovereign immunity for United States for any claim "arising out of … interference with contract rights." 28 U.S.C. § 2680(h). However, sovereign immunity does not bar Plaintiff's tortious interference claim if Escobar was not acting as an agent of the United States at the time of her misconduct. 28 U.S.C. § 2679(h)(1) (Federal Tort Claims Act applies to "injury or loss of property resulting from the . . . wrongful act or omission of any employee of the Government while acting in the scope of her office or employment"). Osborn v. Haley, 549 U.S. 225, 242, 247 (2007) (claims not subject to 28 U.S.C. § 2679(h)(1) not subject to sovereign immunity even if not subject to remand).

4. Concurrently with this response to the United States' motion to dismiss, Plaintiff has filed a Second Amended Complaint reasserting Plaintiff's tortious interference claim against Escobar but also asserting a claim of defamation against Escobar. As reflected in the Second Amended Complaint, the acts of Escobar underlying Plaintiff's claims of tortious interference and defamation against Escobar were outside the course and scope of her employment and office as a Member of Congress. Given such allegations, Plaintiff's claims of tortious interference and defamation against Escobar are not subject to sovereign immunity, and this Court retains

jurisdiction of this action for trial, and, for that purpose, this Court should reinstate Escobar as the defendant in place of the United States of America.

## II.

## APPLICABLE STANDARD

5. Under Fed. R. Civ. P. 12(b)(1), this Court should dismiss a case if this Court has no jurisdiction. Home Builders Association of Miss., Inc. v. City of Madison, 143 F. 3d 1006, 1010 (5th Cir. 1998). A Rule 12(b)(1) motion to dismiss "should be granted only if it appears certain the plaintiff cannot prove any set of facts that would entitle [the plaintiff] to recovery." Morris v. Thompson, 852 F. 3d 416, 419 (5th Cir. 2017). Plaintiff bears the burden of proving this Court has jurisdiction. Fort Bend County v. United States Army Corps of Engineers, 59 F. 4th 180, 189 (5th Cir. 2023). This Court's review of the motion to dismiss depends on whether a facial or factual attack has been made on the plaintiff's pleadings. Gardner v. United States of America, 2005 WL 170716 (N.D. Texas, 2005). The United States did not make a factual attack on the Plaintiff's removed First Amended Original Petition, which occurs when a defendant's Rule 12(b)(1) motion includes "affidavits, testimony, or other evidentiary materials challenging the jurisdiction of the court." Id., citing Middle South Energy, Inc. v. City of New Orleans, 800 F. 2d 488, 490 (5th Cir. 1986). Instead, the United States made only a facial attack on the Plaintiff's removed petition by the filing of its Rule 12(b)(1) motion without disputing Plaintiff's factual assertions or providing any evidence. In a facial attack, this Court must "look at the sufficiency of the allegations in the [plaintiff's pleading], which are presumed to be true." Id., citing Paterson v. Weinberger, 644 F. 2d 521, 523 (5th Cir. 1981).

## III.

## ARGUMENTS AND AUTHORITIES

6. The United States removed Plaintiff's interference claim against Escobar, as asserted in the District Court of Dallas County, Texas, pursuant to the Westfall Act, which provides that a suit based on any wrongful act of an employee of the government "while acting within scope of her office or employment" is governed by 28 U.S.C. §1346(6) and 18 U.S.C. § 2672 and "is exclusive of any other civil action or proceeding for monetary damages." In support of its removal, a Westfall Act certification was submitted pursuant to 28 U.S.C. 2679(d)(2) claiming that Escobar is a United States government employee, and that Escobar was acting in the scope of her office or employment at the time she committed the acts put in issue in Plaintiff's First Amended Original Petition.

7. Plaintiff contests that latter part of the Westfall Act's certification. Escobar did not act in the scope of her office or employment when she perpetrated the torts of interference and defamation stated in her Second Amended Complaint, which states unequivocally in paragraph 5: "At all times, Escobar's tortious interference with Plaintiff's employment with Nexstar and her defamation of Plaintiff, committed as principal, conspirator and aider and abettor, occurred outside of the course-and-scope of her office or employment as a Member of Congress for the 16th Congressional District of Texas." Further, the Second Amended Complaint in paragraphs 29-35, makes further specific allegations supporting the conclusion that Escobar's tortious conduct was not within the course-and-scope of her office or employment as a Member of Congress. The motion to dismiss offers no allegations or argument to contradict Plaintiff's allegations that Escobar was not acting within the course-and-scope of her office or employment as a Member of Congress when she perpetrated torts against Plaintiff. Indeed, the motion to

dismiss, focusing solely on application of Section 2680(h) of the Federal Tort Claims Act, insofar as it addresses claims of interference, does not even address the recognition in the Federal Tort Claims Act that Plaintiff can proceed with suit against Escobar if her tortious misconduct was outside the scope of her duties as a Member of Congress under the law of the state where such misconduct occurred. Osborn, 549 U.S. at 242. A review of Plaintiff's Second Amended Complaint accordingly demonstrates that none of Plaintiff's claims are based on any actions of Escobar within the course-and-scope of her duties as a Member of Congress. This Court must accept the allegations of the Second Amended Complaint as true. Gardner v. United States of America, No. Civ. A. 304CV2483G, 2005 WL 170716 (N.D. Tex. 2005), citing Middle South Energy, Inc. v. City of New Orleans, 800 F. 2d 488, 490 (5th Cir. 1986), and Paterson v. Weinberger, 644 F. 2d 521, 523 (5th Cir. 1981).

8.  Under the Westfall Act, the determination whether a federal employee committed a tort in the scope of his or her office or employment is an issue that must be resolved by the vicarious liability of the state law where the tort or torts occurred. Carroll v. Trump, 49 F. 4th 759, 766-767 (2nd Cir. 2022); Osborn, 549 U.S. at 234, 246.

9.  The Second Amended Complaint alleges in paragraph 2 that Escobar's tortious conduct occurred in Texas, making Texas law applicable to determine whether Escobar was acting within the scope of her office or employment as a Member of Congress in engaging in such conduct. Texas law is clear that Escobar's conduct at issue in this case does not satisfy the Texas standard for vicarious liability, that Escobar was acting in the course-and-scope of her office or employment when she committed her tortious misconduct. In Painter v. Amerimex Drilling I, Ltd., 561 S.W. 3d 125 (Tex. 2018), the Texas Supreme Court, opining on the Texas standard of vicarious liability, held that, in addressing whether an employer is liable for an

employee's torts if the employee's torts occur in the course and scope of his or her employment, the "defining characteristic [of an employer/employee relationship] is the principal's 'right to control the agent's actions undertaken to further the principal's objectives.'" Id. at 132, citing FFP Operating Partners, L.P. v. Duenez, 327 S.W. 3d 680, 686 (Tex. 2007). The Painter court held: "Thus, a plaintiff must demonstrate such a right to control in order to satisfy the first element of a vicarious-liability claim against an employer for its employee's negligence: that the wrongdoer was an employee at the time of the negligent conduct. … As a general matter, this right to control extends to all the employee's acts within the course and scope of his employment, i.e., actions 'within the scope of the employee's general authority in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired.'" Id. citing Goodyear Tire and Rubber Co. v. Mayes, 236 S.W. 753, 757 (Tex. 2007). The Painter court concluded its analysis of whether an employee was acting in the course and scope of his or her employment by holding: "The course-and-scope inquiry under step two involves an objective analysis, hinging on whether the employee was performing tasks generally assigned to him in furtherance of the employer's business. That is, the employee must be acting with the employer's authority and for the employer's benefit." Id. at 138.

10.  While Painter involved a negligence claim, the Texas Supreme Court, in Laverie v. Wetherbe, 517 S.W. 3d 748 (Tex. 2017), held that the tortfeasor (a senior associate dean) was acting in the course-and-scope of his employment when he provided defamatory information regarding a professor who had applied for a deanship position to the university provost. The reason it held the senior associate dean's defamation occurred within the course-and-scope of his employment was that the dean defamed the professor as part of the dean's job duties of evaluating the professor's qualifications. Id. at 755.

PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - Page 6

11.     In Carroll v. Trump, 498 F. Supp. 3d 422 (S.D.N.Y. 2020), aff'd in part, vacating in part, Caroll v. Trump, 49 F. 4th 759 (2nd Cir. 2022) (certifying the question of course-and-scope of employment under District of Columbia law to the Federal Circuit Court of Appeals), the federal district court found former President Trump's defamation against a woman who claimed President Trump raped her in a department store did not occur in the scope of President Trump's office or employment as president.  The district court reasoned, both under District of Columbia law and also New York law, that the President's defamation did not "further the master's business [the Executive branch of the U.S. Government]" and was not "foreseeable to the employer, meaning that it is a direct outgrowth of the employee's instructions or job assignments." Id. at 450-51, 456.

12.     In this case, none of Escobar's tortious interference or defamation was even arguably mandated by the United States, much less occurred while she was in session in Congress or participating in Congressional business in Congress and as such immunized by the Speech and Debate Clause of the United States Constitution, Article 1, Section 6, Clause 1. Further, Escobar's tortious interference and defamation of Plaintiff did not further the business of the United States Congress, did not benefit Congress, and Congress did not have a right of control over Congresswoman Escobar's torts in this case. Under controlling Texas law, Escobar was accordingly not acting in the course-and-scope of her employment when she defamed and tortiously interfered with Plaintiff's employment at Nexstar. Painter, 561 S.W. 3d at 132-133.

13. Escobar's employment duties as a member of the U.S. House of Representatives are set forth in Roles and Duties of a Member of Congress; Brief Overview, Congressional Research Service, Updated February 15, 2022, which is attached as Exhibit "A". This publication identifies the job duties of a congressperson as: (1) Representation; (2) Legislation; (3) Constituency Service; (4) Oversight and Investigation; (5) Advice and Consent (Senators Only); (6) Congressional Leadership; (7) Personal Office Management; and (8) Electoral Activity. None of these job duties include tortiously interfering with the employment of a private citizen or defaming a private citizen. Carroll, 498 F. Supp. 3d at 443-457; compare Laverie, 517 S.W.3d at 753-755. Escobar's tortiously interfering with Plaintiff's employment at Nexstar, and defaming Plaintiff, causing Nexstar to fire Plaintiff, and probably ending Plaintiff's career in journalism, do not even arguably fit within any of the stated duties.

14. This Court should find that Plaintiff's allegations against Escobar in her Second Amended Complaint defeat the attempt by the United States, on behalf of Escobar, to claim, under the Federal Tort Claims Act, including the Westfall Act, that Escobar is immune from liability because she was acting in the scope of her office or employment as a Member of Congress in interfering with Plaintiff's employment with Nexstar and defaming Plaintiff. Accordingly, the name of the defendant in this action should be re-substituted from the United States of America back to Escobar, even though this action must remain in this Court pursuant to the Westfall Act. Osborn, 549 U.S. at 242.

## IV.

## **CONCLUSION**

15. This Court should deny the United States' motion to dismiss, dismiss the United States as a defendant, substitute Escobar as the defendant in place of the United States, and set this action for a trial on the merits.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court deny the United States' Rule 12(b)(1) Motion to Dismiss, set this action for trial, and upon final hearing, Plaintiff recover her actual, including compensatory, damages against Defendant and punitive or exemplary damages against Defendant, prejudgment and post-judgment interest at the maximum legal rate, all costs of court, and such other and further relief at law or in equity to which Plaintiff may be justly entitled.

Respectfully submitted,

KILGORE & KILGORE, PLLC

By: /s/ *Robert E. Goodman, Jr.*
Robert E. Goodman, Jr.
State Bar No. 08158100
reg@kilgorelaw.com
John S. Morgan
State Bar No. 14447475
jsm@kilgorelaw.com
3141 Hood Street, Suite 500
Dallas, Texas 75219
(214) 969-9099 - Telephone
(214) 379-0840 - Fax

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing was forwarded to counsel of record via the Court's electronic filing system and/or via email on the 11th day of April 2023.

Brian W. Stoltz
Assistant United States Attorney
Texas Bar No. 24060668
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:	214-659-8626
Facsimile:	214-659-8807
brian.stoltz@usdoj.gov

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.