IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTINA AGUAYO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-00539-E |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United States of America (government)'s Motion to Dismiss Plaintiff's Second Amended Complaint, which seeks to dismiss all of Plaintiff Aguayo's claims against the government on behalf of Congresswoman Veronica Escobar. (ECF No. 13). For the reasons enumerated hereunder, the Court dismisses all of Aguayo's claims with prejudice.

### I. BACKGROUND

On December 6, 2022, Aguayo filed her original petition against Escobar. (ECF No. 1-6).[1] The government thereafter removed to this Court and substituted itself as the defendant to Aguayo's claims. (*See* ECF Nos. 1, 1-1). As amended on April 11, 2023, in her Second Amended Complaint, Aguayo asserts claims for (i) tortious interference of contract and (ii) defamation. (ECF No. 11). Aguayo alleges she worked as a news reporter in El-Paso, Texas with Nexstar affiliate KTSM-TV9 (KTSM). (ECF No. 11 at 2). Aguayo alleges that (i) Escobar's tortious interference with her contract with Nexstar and (ii) defamation of Aguayo caused Nexstar to terminate Aguayo from her work at KTSM. (ECF No. 11 at 2). The Second Amended Complaint contains several

---

[1] It is undisputed that, as a member of the United States Congress, Escobar represents portions of El-Paso in Texas's 16th Congressional District.

allegations that Escobar and her congressional staff made tortious, defamatory statements to KTSM management about Aguayo's work. (ECF No. 11 at 2-10). The Second Amended Complaint further contains several allegations that Escobar and her congressional staff made tortious, defamatory statements about Aguayo on social media websites. (ECF No. 11 at 5-6).

The government now moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss Aguayo's claims. (ECF No. 13). Aguayo has responded and challenged the government's Westfall Act Certification for Escobar. (ECF No. 19; *see generally* ECF No. 11 at 13-17). The government has replied (ECF No. 21). On July 17, 2023, Aguayo filed a motion for leave to file a surreply. (ECF No. 23). Aguayo's motion for leave does not brief any extraordinary circumstance basis or good cause basis to grant the surreply. (ECF No. 23). Aguayo's proposed surreply "simply highlights pertinent relevant authority not available when Plaintiff filed her response." (ECF No. 23-1).

Surreplies "are heavily disfavored," and it is within the sound discretion of the courts to grant or deny leave to file such additional briefing. *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) (per curiam) (quoting *Weems v. Hodnett*, No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011)). The Court DENIES Aguayo's motion for leave to file a surreply. Otherwise, having been fully briefed, the Court next adjudicates the government's motion to dismiss.

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A district court properly dismisses a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1) if the court "lacks the statutory

or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012) (citation omitted). A court may dismiss for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986). Thus, a Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)).

When, as here, a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Paterson*, 644 F.2d at 523. The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Paterson*, 644 F.2d at 523. "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

### III.   ANALYSIS

**A. Whether Aguayo Successfully Challenged the Government's Westfall Act Certification**

In her Second Amended Complaint and response to the motion to dismiss, Aguayo challenges the government's Westfall Act Certification for Escobar. (*See* ECF Nos. 1-1, 11, 19). "The Westfall Act grants a federal employee suit immunity . . . when acting within the scope of his office or employment at the time of the incident out of which the claim arose." *Osborn v. Haley*,

549 U.S. 225, 247 (2007) (quoting 28 U.S.C.A. § 2679(d)(1), (2)) (quotation marks omitted). The Fifth Circuit stated that:

> upon certification by the Attorney General or his designated representative that a government employee was acting within the scope of his employment at the time of an allegedly tortious act, the United States may substitute itself as the proper defendant in an action against the employee and remove the action to federal court.

*White v. United States*, 419 F. App'x 439, 442 (5th Cir. 2011). "For purposes of removal jurisdiction, the certification conclusively establishes the employee was acting within the scope of his employment." *White*, 419 F. App'x at 442 (citing 28 U.S.C. § 2679(d)(2)). However, such "certification is judicially reviewable for the purpose of substituting the United States as the defendant." *Bolton v. United States*, 946 F.3d 256, 260 (5th Cir. 2019) (citing *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995)). "The plaintiff has the burden of showing 'that the defendant's conduct was not within the scope of his or her employment.'" *Bolton*, 946 F.3d at 260 (quoting *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995)).

> To rebut the government's scope-of-employment certification, "***the plaintiff must allege***, in either the complaint or a subsequent filing, ***specific facts that, taken as true, would establish that the defendant's actions exceeded the scope of his employment***." *Jacobs v. Vrobel*, 724 F.3d 217, 220 (D.C. Cir. 2013) (cleaned up).

*Bolton*, 946 F.3d at 260 (emphasis added in bold italics). "Whether a federal employee acted within the scope of his employment is determined by the law of the state in which the negligent or wrongful conduct occurred." *White*, 419 F. App'x at 442 (citing *Garcia v. United States,* 62 F.3d 126, 127 (5th Cir.1995) (en banc)).

Neither party disputes that Texas Law applies to this case. "In Texas, an employee's conduct is considered to fall within the scope of his employment if his actions were '(1) within the general authority given him; (2) in furtherance of the employer's business; and (3) for the accomplishment of the object for which the employee was employed.'" *Counts v. Guevara*, 328

F.3d 212, 214 (5th Cir. 2003) (quoting *Williams,* 71 F.3d at 506) (internal citation omitted). "This test applies to all scope of employment questions, including those involving allegedly defamatory statements." *Counts*, 328 F.3d at 214 (citing *Minyard Food Stores, Inc. v. Goodman,* 80 S.W.3d 573, 578 (Tex. 2002)). The Texas Supreme Court has explained:

> The scope-of-employment analysis, therefore, remains fundamentally objective: Is there a connection between the employee's job duties and the alleged tortious conduct? The answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to her job responsibilities.

*Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017). In *Williams*, the Fifth Circuit discussed the scope of employment for a member of Congress in the context of the Westfall Act:

> [] Members of Congress traditionally communicate to the public about issues of law, often expressing their concerns and opinions about the need to change the laws. Indeed, the legislative duties of Members of Congress are not confined to those directly mentioned by statute or the Constitution. Besides participating in debates and voting on the Congressional floor, a primary obligation of a Member of Congress in a representative democracy is to serve and respond to his or her constituents. Such service necessarily includes informing constituents and the public at large of issues being considered by Congress. It is unnecessary to the resolution of the case at bar to present an exhaustive list of the duties of Members of Congress or those activities that would or would not fall within a purview of activities taken in the course and scope of one's position as a Member of Congress.

*Williams*, 71 F.3d at 507 (ultimately affirming dismissal of claims).

Here, the United States Attorney certified "that Congresswoman Veronica Escobar was acting within the scope of her office or employment with the United States at the time of the incident(s) out of which the plaintiff's claim(s) arose." (ECF No. 1-1). It is undisputed that Escobar was a member of Congress—and thereby a federal employee—at the time of the alleged conduct. *See Williams,* 71 F.3d at 504-05 (concluding that Congressman Brooks was a federal employee subject to the Westfall Act). As pled and briefed, Aguayo asserts "Escobar did not act in the scope of her office or employment when she perpetrated tortious interference or defamation against Plaintiff." (ECF No. 11 at 13; *see* ECF No. 19).

On Aguayo's burden to show Escobar's conduct was not within the scope of Escobar's employment, Aguayo argues:

> [I]f Plaintiff attests to facts raising an issue of fact whether an alleged federal employee's conduct was outside the scope of his employment, the Motion, like any motion to dismiss, should be denied. Plaintiff has done so by a declaration attached to this response verifying the factual allegations in paragraph 4 and paragraphs 6 through 27 of her second amended complaint. <u>That verification of the factual allegations of the second amended complaint by Plaintiff is not necessarily sufficient to avoid dismissal of Plaintiff's claims supported by such allegations when as is this action, the U.S. attorney's Westfall Act certification is devoid of facts or reasoning, instead purely conclusory, and actually not even purporting to attest to a fact or facts, but solely an "opinion."</u> *See* [sic] Westfall Act certification of Leigha Simonton attached to Defendant's notice of removal.

(ECF No. 19 at 9) (emphasis in underline in original). However, Aguayo cites no authority that "raising an issue of fact" or verifying such facts pled would preclude dismissal in a Rule 12(b)(1) motion to dismiss context, and the Court has found none. Nothing in the Parties' briefing supports converting the government's motion to dismiss to a motion for summary judgment. *See generally Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c).").

In response to the issue of whether Escobar acted in the scope of her duties in relation to the conduct alleged in the Second Amended Complaint, Aguayo relies heavily on *Carroll v. Trump*, 49 F.3d 759 (2nd Cir. 2022) and *Carroll v. Trump*, 498 F. Supp. 3d 422 (S.D.N.Y. 2020). (*See* ECF No. 19). In effect, Aguayo asserts the legal positions of Escobar and former president Donald Trump—as to tort claims—are comparable. The Court declines to apply those cases before the Second Circuit Court of Appeals and Southern District of New York in this proceeding as neither case is mandatory precedent, and there are material differences in the Parties and substance of the conduct alleged.

As pled, the vast majority of Aguayo's allegations refer generally to "defamatory statements," or "complain[ts]," without providing specific facts of what content comprised such statements or complaints. (*See* ECF No. 11 at 2-10). Viewing Aguayo's pled facts together and taking them as true, it is evident that Escobar disagreed with Aguayo's news reporting on political matters that affected her constituents. (*See* ECF No. 11 at 2-10). It is apparent that Aguayo communicated her disagreement with KTSM. (*See* ECF No. 11 at 2-10). As pled, Escobar's alleged conduct does not exceed the scope of her employment as a member of Congress. *See generally Williams*, 71 F.3d at 507. Upon review of the facts asserted in the Second Amended Complaint, Aguayo has failed to plead "specific facts that, taken as true, would establish that the defendant's actions exceeded the scope of [Escobar's] employment." *Bolton*, 946 F.3d at 260. The court concludes that Aguayo has failed to carry her burden to rebut the government's scope-of-employment certification. *Bolton*, 946 F.3d at 260.

### B. Sovereign Immunity

The government argues this case should be dismissed under Rule 12(b)(1) "because no waiver of sovereign immunity applies and therefore jurisdiction is lacking." (ECF No. 13 at 11). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank,* 486 U.S. 549, 554 (1988); *Federal Housing Administration v. Burr,* 309 U.S. 242, 244 (1940)). The Supreme Court has stated:

> Sovereign immunity is jurisdictional in nature. Indeed, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941). See also *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983) ( "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction").

*Meyer*, 510 U.S. at 475.

Here, Aguayo has pled that Escobar—and by Westfall Act substitution the government—committed intentional torts. By enacting the Federal Tort Claims Act (FTCA), Congress waived the United States' sovereign immunity for certain claims arising from torts committed by federal employees. 28 U.S.C. §§ 1346(b)(1), 2671-2680; *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217-18 (2008); *see generally Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 535 (1988). To successfully sue under the FTCA, a plaintiff must bring a claim: (1) against the United States; (2) for money damages; (3) for injury or loss of property, or personal injury or death; (4) caused by the negligent or wrongful act or omission of any employee of the federal government; (5) while acting within the scope of his or her employment; and (6) under circumstances where the United States, if a private person, would be liable to the plaintiff in accordance with the state law where the act or omission occurred. 28 U.S.C. § 1346(b); *Meyer*, 510 U.S. at 477-78.

However, there are express exceptions to the waiver of sovereign immunity found in the FTCA. *See* 28 U.S.C. § 2680 (enumerating the various exceptions to § 1346(b)). The exceptions that appear in the FTCA must be strictly construed in favor of the government. *Atorie Air, Inc. v. Federal Aviation Admin.*, 942 F.2d 954, 958 (5th Cir.1991) ("the limitations and conditions upon which the government consents to be sued must be strictly construed in favor of the United States."). Pertinent here, one exception to the waiver of sovereign immunity is found in 28 U.S.C. § 2680(h), which provides:

> The provisions of this chapter and section 1346(b) [(the FTCA)] of this title shall not apply to--
>> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, *libel*, *slander*, misrepresentation, deceit, or *interference with contract rights* [.]

28 U.S.C. § 2680(h) (emphasis added).

As determined hereabove, Aguayo has failed to carry her burden to rebut the government's Westfall Act Certification on behalf of Escobar. Aguayo offers no independent response to the application of the 28 U.S.C. § 2680(h) exception to the FTCA's limited waiver of sovereign immunity. As the government's sovereign immunity has not been waived, the Court must **GRANT** the government's motion to dismiss all of Aguayo's claims.

### IV.    CONCLUSION

For the reasons explained hereabove, the Court GRANTS the government's to dismiss Aguayo's tortious interference and defamation claims. The Court shall enter a Rule 54(b) final judgment. *See* Fed. R. Civ. P. 54.

**SO ORDERED.**

18th day of January, 2024.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE